UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
MARILYN BROOMER and KRISTIN KOPF,

                              Plaintiffs,                  **MEMORANDUM AND ORDER**
                                                                       12 CV 574 (DRH) (AKT)

       -against-

HUNTINGTON UNION FREE SCHOOL DISTRICT,
CARMEN CASPER, JOHN FINELLO,
JOSEPH GIANI, and JAMES POLANSKY,

                              Defendants.
----------------------------------------------------------------------X
VINCENZA CARUSO-FAMIGLIETTI,

                              Plaintiff,                    **MEMORANDUM AND ORDER**
                                                                        12 CV 575 (DRH) (AKT)

      -against-

HUNTINGTON UNION FREE SCHOOL DISTRICT,
CARMEN CASPER, JOHN FINELLO,
JOSEPH GIANI, and JAMES POLANSKY,

                              Defendants.
----------------------------------------------------------------------X

**APPEARANCES:**

**LAW OFFICE OF STEVEN A. MORELLI, P.C.**
Attorneys for Plaintiffs
1461 Franklin Avenue
Garden City, New York 11530
By:    Steven A. Morelli, Esq.

**SOKOLOFF STERN LLP**
Attorneys for Defendants
355 Post Avenue, Suite 201
Westbury, New York 11590
By:    Steven C. Stern, Esq.
        Melissa L. Holtzer, Esq.

**HURLEY, Senior District Judge:**

Marilyn Broomer ("Broomer"), Kristin Kopf ("Kopf"), and Vincenza Caruso-Famiglietti ("Famiglietti") (collectively, "plaintiffs") commenced Section 1983 actions against the Huntington Union Free School District (the "School District") and several of its employees (collectively, "defendants") alleging that defendants violated their rights under the Procedural Due Process Clause and Equal Protection Clause of the Fourteenth Amendment, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*, and the Suffolk County Human Rights Law. In particular, plaintiffs claim that defendants "excessed" them as a result of their race and national origin, and did so without following established legal procedures. Presently before the Court is defendants' motions to dismiss the Complaints pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

The following facts are drawn from the allegations in the Complaints and are assumed to be true for purposes of this motion.[1]

**I.   *Parties*** 

Plaintiffs Broomer, Kopf, and Famiglietti are Caucasian-American elementary school teachers in the School District. (Broomer ¶¶ 1, 6-7; Famiglietti ¶¶ 1, 6.) Broomer was hired by the School District in September 2004 to teach at the Woodhull Intermediate School. (Broomer ¶ 16.) For her first year she taught a fourth grade class and has since taught fifth grade classes. (*Id.*) Broomer holds New York State Teaching Certifications in Elementary Education, Reading,

---

[1]   Broomer and Kopf filed a complaint separately from Famiglietti. The complaint filed by Broomer and Kopf will be identified as "Broomer" and the complaint filed by Famiglietti will be identified as "Famiglietti."

and Business Distributive Education, as well as a Masters in Business Administration. (*Id.* ¶ 15.) Broomer received tenure in 2007. (*Id.* ¶ 16.)

Kopf was hired by the School District in September 2005 to teach at the Flower Hill Elementary School. (*Id.* ¶ 18.) She has taught first grade, third grade, and fourth grade classes. (*Id.*) Kopf holds New York State Teaching Certifications in Elementary Education and Reading, and has a Dual Masters of Science degree in both Elementary Education and Literacy Education. (*Id.* ¶ 17.) Kopf received tenure in 2008. (*Id.* ¶ 18.)

Famiglietti taught as a substitute teacher in the School District between 1999 and 2000, and was hired as a permanent full-time teacher in September 2005. (Famiglietti ¶ 15.) She has taught first grade, second grade, and fourth grade for various schools within the School District. (*Id.* ¶ 16.) Famiglietti holds a Bachelor of Arts in Elementary Education, a Masters in Literacy, a Masters in Administration, and is certified to teach special education. (*Id.* ¶ 14.) Famiglietti is also working towards her English as a Second Language ("ESL") certification. (*Id.*)

Defendant John Finello was the Superintendent of the School District until July 2011, when defendant James Polansky took over. (Broomer ¶ 10, 12; Famiglietti ¶ 9, 11.) Defendant Joseph Giani was at all times the Assistant Superintendent of Personnel and General Administration of the School District. (Broomer ¶ 11; Famiglietti ¶ 10.) Finally, defendant Carmen Casper was at all times the director of the ESL and Dual Language programs in the School District. (Broomer ¶ 9; Famiglietti ¶ 8.)

II.     *The Dual Language Program*

The School District's dual language program began expanding "several years ago," replacing the previous bilingual language program, which was administered only to Spanish-speaking students. (Broomer ¶ 21; Famiglietti ¶ 19.) The dual language program is

administered to a mix of native Spanish-speaking Hispanic students who need further instruction in Spanish and to non-Hispanic, primarily Caucasian students who speak English as a primary language. (Broomer ¶ 22; Famiglietti ¶ 20.) The dual language program, however, does not contain all of the native Spanish-speaking students who need ESL classes, and several ESL students are in English-only classes. (Broomer ¶ 24; Famiglietti ¶ 22.) Classes are taught on alternative days in English and Spanish, and students are expected to be fluent enough in both languages as there is no review of past material. (Broomer ¶ 22; Famiglietti ¶ 20.) Therefore, all dual language students only receive half of a year of instruction in English from grades one through five. (Broomer ¶ 22; Famiglietti ¶ 20.) While enrollment into the program is optional, plaintiffs state that administrators put "strong pressure" on parents of "better-behaved students" to enroll their children in order to increase average test scores and keep the program going. (Broomer ¶ 23; Famiglietti ¶ 21.)

### III.   *Excessing of Plaintiffs*

From 2008 through 2012, each of the plaintiffs were excessed by the School District due to the increase in dual language classes and the hiring of dual language teachers. (Broomer ¶¶ 20, 32; Famiglietti ¶¶ 18, 25.) In June 2007, June 2008, June 2010, and June 2011, Famiglietti was excessed and placed on the Preferred Eligibility List. (Famiglietti ¶ 25.) Each time that Famiglietti was excessed was due to a dual language class replacing her class. (*Id*.) Although Famiglietti was immediately recalled to teach a different class the first three times that she was excessed, she remained unemployed from the fourth excess until January 2012, when she replaced a teacher on maternity leave. (*Id.* ¶¶ 25-26.) The School District has required that Famiglietti obtain ESL certification for her to permanently remain in this position. (*Id.* ¶ 26.)

4

Despite her excessing, there were eleven dual language teachers who had not been excessed and who had less seniority, some of which who also lacked tenure. (*Id.* ¶ 27.)

Kopf was excessed in June 2008, June 2009, and June 2010. (Broomer ¶ 32-33.) Each time that she was excessed was due to the hiring of a dual language teacher. (*Id.* ¶ 33.) After she was excessed in 2010, the School District posted an advertisement for vacant teacher positions which included dual language positions. (*Id.* ¶ 40.) Although she was ultimately recalled for the 2008-2009, 2009-2010, and 2010-2011 school years to teach a different class, she has not been recalled since June 2011, and remains unemployed. (*Id.* ¶¶ 33-34.) In June 2011, Broomer was excessed for her first and only time. (*Id.* ¶ 35.) She was ultimately recalled as a leave replacement for the 2011-2012 school year. (*Id.*) Despite their excessing, there were ten dual language teachers who had not been excessed and had less seniority than Kopf, and twelve dual language teachers who had not been excessed and had less seniority than Broomer. (*Id.* ¶ 36.) In some cases, those teachers who were not excessed did not have tenure, and were less educated than plaintiffs. (*Id.* ¶¶ 36-37.)

## DISCUSSION

### I. <u>Legal Standard</u>

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) that "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

5

claim which would entitle him to relief.'" *Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46). To survive a motion to dismiss, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true.

*Id.* at 555 (internal quotation marks, citations, and alterations omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The Supreme Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable interference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

6

*Id.* at 678 (citations omitted) (quoting *Twombly*, 550 U.S. at 556-57); *see also Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) ("[A] complaint must contain factual allegations to support the legal conclusions and the factual allegations must plausibly give rise to an entitlement of relief.") (internal quotation marks omitted).

## II. *Defendants' Motion to Dismiss*

Plaintiffs assert three claims in their Complaints. First, plaintiffs allege that defendants deprived them of their procedural due process rights by "excessing them without following legal procedures in determining the order of teacher excesses." (Broomer ¶ 47; Famiglietti ¶ 35.) Second, plaintiffs claim that defendants deprived them of equal protection "by excessing them . . . as a result of their race and national origin." (Broomer ¶ 46; Famiglietti ¶ 34.) Finally, plaintiffs maintain that defendants unlawfully discriminated against them "in that [defendants] treated them disparately because of their race and national origin." (Broomer ¶ 45; Famiglietti ¶ 33.) These claims and the arguments advanced by the parties in support of and in opposition to their dismissal will be addressed in turn.

### A. **Procedural Due Process**

Seeking to dismiss plaintiffs' due process claims, defendants argue that plaintiffs do not state a claim because there were post-deprivation remedies available to them, such as an Article 78 proceeding. In response, plaintiffs contend that the "assertion that adequate post-deprivation procedures were available does not relieve [defendants] of their obligation to provide pre-deprivation procedures where due process so requires, as is the case here." (Pls.' Opp'n at 1.)

"In order to prevail on a § 1983 claim for violation of the procedural due process rights guaranteed by the Fourteenth Amendment, the plaintiff must show (1) that he possessed a protected liberty or property interest; and (2) that he was deprived of that interest without due

7

process." *Rehman v. State Univ. of N.Y. at Stony Brook*, 596 F. Supp. 2d 643, 656 (E.D.N.Y. 2009) (citing *McMenemy v. City of Rochester*, 241 F.3d 279, 285–86 (2d Cir. 2001)); *accord Nnebe v. Daus*, 644 F.3d 147, 158 (2d Cir. 2011) ("In a § 1983 suit brought to enforce procedural due process rights, a court must determine (1) whether a property interest is implicated, and, if it is, (2) what process is due before the plaintiff may be deprived of that interest.")  As to the first element, a tenured public school teacher has a property interest in his or her continued employment.  *See DeMichele v. Greenburgh Cent. Sch. Dist.*, 167 F.3d 784, 789 (2d Cir.1999) ("It is well-settled that DeMichele, as a public employee who can be discharged only for cause, had a constitutionally protected property interest in his tenure and could not be fired without due process."); *see also Blum v. Schlegel*, 18 F.3d 1005, 1015 (2d Cir. 1994) ("Tenure, once conferred, is a property interest protected by the Due Process Clauses of the Fifth and Fourteenth Amendments.").  Because the Complaints allege a protected property interest of the plaintiffs, namely that they were excessed from their tenured positions, the question becomes what process was due to them.

"Due process does not, in all cases, require a hearing before the state *interferes* with a protected interest, so long as 'some form of hearing is [provided] before an individual is finally deprived of [the] property interest.'" *Nnebe*, 644 F.3d at 158 (quoting *Brody v. Vill of Port Chester*, 434 F.3d 121, 134 (2d Cir. 2005)); *see also Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972) (noting that "due process is flexible and calls for such procedural protections as the particular situation demands").  For example, courts – including this Court in *Banigo v. Bd. of Educ.*, 2009 WL 577974, at *10 (E.D.N.Y. Mar. 4, 2009) – have held that due process does not require a pre-termination hearing when a tenured teacher's position is abolished.  *See, e.g.*, *Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Co-op.*

8

*Educ. Servs.*, 2011 WL 4899991 (W.D.N.Y. Oct. 13, 2011), *aff'd*, 503 F. App'x 12 (2d Cir. 2012); *Mitchell v. Bd. of Educ. of the Great Neck Pub. Sch.*, 40 N.Y.2d 904, 905, 389 N.Y.S.2d 354, 357 N.E.2d 1008 (1976). In such a scenario, "there is no due process violation, and thus no available § 1983 action, when the employee has access to an adequate state post-deprivation remedy, and the Second Circuit has found New York's CPLR Article 78 review to be 'a perfectly adequate post-deprivation remedy' in the context of employment termination." *Quattrone*, 2011 WL 4899991, at *11 (citations omitted) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996)).

Where a tenured teacher's position is abolished and another position is created, however, a pre-termination hearing may be required. Courts have held that "a school employee should have been provided a pre-termination hearing if there was an apparent possibility that a new post, created concurrently with the abolishment of an old post, was similar to the eliminated post."[2] *Fairbairn v. Bd of Educ.*, 876 F. Supp. 432, 435 (E.D.N.Y. 1995) (citing *DeSimone v. Bd. of Educ.*, 612 F. Supp. 1568 (E.D.N.Y. 1985) and *Goldberg v. Bd. of Educ.*, 777 F. Supp. 1109 (E.D.N.Y. 1991)); *see also Elmendorf v. Howell*, 962 F. Supp. 326, 332 (N.D.N.Y. 1997) ("Although it seems clear that under New York law, when a position held by a tenured individual is *abolished* no pre-termination hearing is required, the Court finds that when there is a question of fact as to the similarity of the subsequently created position, the Court should not

---

[2] Relevant to this determination is Section 2510 of the New York Education Law, which states the following:

> If the board of education abolishes an office or position and creates another office or position for the performance of duties *similar* to those performed in the office or position abolished, the person filling such office or position at the time of its abolishment shall be appointed to the office or position thus created . . . .

N.Y. Educ. L. § 2510(1) (emphasis added).

dispose of a concomitant due process claim on summary judgment." (internal citations omitted)). Despite this matter only being at the motion to dismiss stage and after accepting the allegations in the Complaint as true, it can be determined as a matter of law that due process did not require plaintiffs receiving a pre-termination hearing.

In this action, plaintiffs' positions as teachers in English-only classes were replaced by dual language classes taught by less experienced bilingual teachers. Notwithstanding plaintiffs' contention that their "exact claim is not that their positions were actually abolished, but instead that they were terminated as teachers and their positions filled by other teachers" (Pls.' Opp'n at 9), the Complaints state otherwise. In their Complaints, plaintiffs allege that due to the increase in dual language classes they were excessed and replaced by dual language teachers. (Broomer ¶¶ 20, 33; Famiglietti ¶ 18.) Even more telling is the Famiglietti Complaint which concedes that each time she was excessed was "because a dual language class replaced her class." (Famiglietti ¶ 25.) Absent from their Complaints – and their opposition papers for that matter – is any contention that the dual language teachers were hired to replace plaintiffs in their respective English-only classes. Because plaintiffs' English-only positions were abolished and replaced with dual language positions, a pre-termination hearing was only required if their English-only positions were *similar* to the dual language classes.

"'The test of whether the duties of the two positions are in fact similar is whether more than 50% of the functions to be performed by the incumbent of the new position are those which were performed by the [plaintiff] in her old position.'" *Elmendorf*, 962 F. Supp. at 331 (quoting *Greenspan v. Dutchess Cnty. Bd. of Co-op. Educ. Servs.*, 96 A.D.2d 1028, 1029, 466 N.Y.S.2d 430 (2d Dep't 1983)). Here, plaintiffs allege that dual language classes are taught on alternate days in English and Spanish. Since half of the year is taught in English, the functions performed

10

in the English-only classes were, as per the Complaints, not more than 50 percent to that of the dual language classes. As plaintiffs' abolished positions were, as a matter of law, dissimilar to the newly created positions, due process did not require a pre-termination hearing.[3] *See Sever v. Bd. of Educ.*, 2012 WL 3886180, at *2 (N.D.N.Y. Sept. 6, 2012) (finding that a "post-abolition Article 78 proceeding" would be sufficient if plaintiff's position "was abolished for legitimate reasons and there was not a similar position filled"); *DeSimone v. Bd. of Educ.*, 604 F. Supp. 1180, 1183 (E.D.N.Y. 1985) ("If, at the time of discharge, undisputed facts could establish as a matter of law that the positions were not 'similar' within the meaning of the substantive law of Education Law § 2510(1), then a hearing would have served no purpose, and the Board did not violate the Due Process Clause by discharging plaintiff."). Accordingly, plaintiffs are incapable of bringing a plausible claim for denial of due process under Section 1983.

### B. Equal Protection

According to plaintiffs, their race and national origin-based equal protection claim is premised on the contention that "imposing a requirement to have a dual-language certification in order to teach within the school district under the circumstances of this case disparately impacts those teachers, such as Plaintiffs, who are not Hispanic in origin." (Pls.' Opp'n at 9.) In support of dismissing this claim, defendants argue that a "[d]isparate impact theory is inapplicable to Equal Protection cases."[4] (Defs.' Reply at 7.)

---

[3] Although plaintiffs maintain that abolishing their positions as opposed to other teachers with less seniority within their tenure track violated Section 2510(2) of the New York Education Law (Pls.' Opp'n at 3-4), such a contention does not impact the due process analysis. If anything, this is what plaintiffs should be arguing in an Article 78 proceeding.

[4] Plaintiffs acknowledge in their opposition papers that they are not asserting a "class of one" equal protection claim but, rather, one based upon their race and national origin. (Pls.' Opp'n at 9.) Because a class of one equal protection claim is not being asserted in this case, defendants' class of one arguments will not be addressed.

11

"The Fourteenth Amendment guarantee of equal protection is 'a right to be free from invidious discrimination in statutory classifications and other governmental activity.'" *Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) (quoting *Harris v. McRae*, 448 U.S. 297, 322, 100 S. Ct. 2671, 65 L. Ed. 2d 784 (1980)). "To state a claim for an equal protection violation, [plaintiffs] must allege that a government actor intentionally discriminated against them on the basis of race, national origin or gender." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999). To sufficiently plead an intentional discrimination equal protection claim a plaintiff can: (1) point to a policy that is discriminatory on its face, meaning that it expressly classifies persons on the basis of their race or national origin; (2) identify a facially neutral policy that is applied in an intentionally discriminatory fashion; or (3) allege that a facially neutral policy is motivated by discriminatory animus and its application resulted in a discriminatory effect. *See Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000); *Hayden*, 180 F.3d at 48.

Plaintiffs erroneously claim that identifying a policy that disparately impacts Caucasian-Americans such as themselves without alleging discriminatory intent is sufficient to assert an equal protection claim. "Although disproportionate impact is not irrelevant, to violate the Fourteenth Amendment the disproportionate impact must be traced to a *purpose* to discriminate on the basis of race" or national origin. *Hayden v. Paterson*, 594 F.3d 150, 162-63 (2d Cir. 2010) (internal quotation marks, citations, and brackets omitted); *see also Washington v. Davis*, 426 U.S. 229, 239, 96 S. Ct. 2040, 2047, 48 L. Ed. 2d 597 (1976) ("[O]ur cases have not embraced the proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional solely because it has a racially disproportionate impact."); *Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012) ("[E]qual protection claims under § 1983 cannot be based solely on the disparate impact of a facially

12

neutral policy."); *Johnson v. Wing*, 178 F.3d 611, 615 (2d Cir. 1999) ("[A] policy does not deny equal protection merely because it is known to affect a particular class adversely."); *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) ("[A] plaintiff pursuing a claimed violation of . . . equal protection under § 1983 must show that the discrimination was intentional."). Therefore, plaintiffs cannot proceed under a disparate impact theory of liability regarding their Section 1983 equal protection claim.

The Court notes that the disparate impact theory of liability argued by plaintiffs in opposition to defendants' motion to dismiss differs from their theory of liability alleged in their Complaints. (*See* Broomer ¶ 46; Famiglietti ¶ 34 ("Defendants . . . deprived the Plaintiffs of their constitutional rights to equal protection . . . by excessing them . . . as a result of their race and national origin.").) It is unclear whether plaintiffs, by shifting from a disparate treatment theory to a disparate impact theory, sought to abandon their equal protection claim under a disparate treatment theory. Based on their papers, and despite what was alleged in their Complaints, it would appear that plaintiffs no longer are pursuing a disparate treatment equal protection claim. (*See* Pls.' Opp'n at 9-10.) Nevertheless, plaintiffs have failed to sufficiently plead an intentional discrimination claim based on any of the methods enumerated above.

The purported conduct at issue here, requiring teachers to have dual-language certification, does not on its face make any racial or national origin classification as the language one speaks is not contingent upon one's race or national origin. *See Soberal-Perez v. Heckler*, 717 F.2d 36, 41 (2d Cir. 1983) ("Language, by itself, does not identify members of a suspect class."). Even more attenuated from an express classification is the requirement of having teachers obtain a particular certification. If plaintiffs were dual-language certified or acquired the requisite certifications, for example, they would be eligible to teach in the dual language

13

program regardless of their race or ethnicity. Likewise, Hispanic teachers who lacked the proper certification would not be eligible to teach in the program.

Moreover, even assuming for present purposes that the Complaints asserted that the School District's policy of requiring teachers to have dual-language certification disparately impacted Caucasian-Americans,[5] the Complaints are devoid of any facts suggesting that race or national origin was a motivating factor behind the enactment of the policy. *See Hayden*, 180 F.3d at 50 ("Discriminatory intent or purpose typically refers to those instances when a government actor seeks to disadvantage or negatively impact a group of persons."). In fact, the only allegation in the Complaints which could even be construed as evidencing the School District's motive is non-discriminatory. (*See* Broomer ¶ 42; Famiglietti ¶ 30 ("[T]he district will do what it can to keep the dual language program going because they may be receiving state or federal grant money for this program.").) Therefore, even if plaintiffs sought to oppose defendants' motion to dismiss under a proper theory of liability, their Complaints would have still failed to state a plausible intentional discrimination equal protection claim.

C. **NYSHRL Discrimination**

Section 296 of the NYSHRL makes it unlawful for an employer to discriminate against an employee on the basis of, *inter alia*, race or national origin. N.Y. Exec. Law § 296. Similar to their equal protection claim, plaintiffs contend that they were unlawfully discriminated against on the basis of their race and national origin because "[d]efendants' policy [of] requir[ing] its teachers to be dual-language-certified disproportionately affects them, and other non-Hispanic teachers, as compared to those Hispanic teachers who more likely than not speak both English

---

[5] As will be discussed in greater detail below, plaintiffs' Complaints do not allege that the School District had a policy requiring teachers to have dual-language certification.

14

and Spanish."[6] (Pls.' Opp'n at 10.) Seeking to dismiss this claim, defendants maintain that plaintiffs have failed to establish a *prima facie* case of discrimination because plaintiffs are not members of a protected class, they are not qualified for the dual language positions that the School District retained, and their excessing did not occur under circumstances giving rise to an inference of discrimination. (Defs.' Mem. at 11.)

     Once again, there appears to be some confusion over what theory of liability plaintiffs are bringing their claim under. While the Complaints allege a disparate treatment theory of liability in that defendants "treated them disparately because of their race and national origin" (*see* Broomer ¶ 45; Famiglietti ¶ 33), plaintiffs shift to a disparate impact theory of liability in opposing defendants' motion to dismiss. Unlike in equal protection, a disparate impact theory of liability is appropriate under the NYSHRL. *See, e.g.*, *Gonzalez v. City of New York*, 135 F. Supp. 2d 385, 399 (E.D.N.Y. 2001); *People v. N.Y.C. Transit Auth.*, 59 N.Y.2d 343, 348-49, 452 N.E.2d 316, 465 N.Y.S.2d 502 (1983). While it appears that plaintiffs are only seeking to move forward under a disparate impact theory, it is insignificant whether the Court considers what is alleged or what is argued as plaintiffs' have failed to state a claim under either theory.

---

[6]     Plaintiffs allege that the unlawful discrimination of defendants violated not only the NYSHRL but also the Suffolk County Human Rights Law. (*See* Broomer ¶ 45; Famiglietti ¶ 33.) Defendants argue, without opposition from plaintiffs, that the Suffolk County Human Rights Law does not provide a private right of action. (Defs.' Mem. at 11 n.1.) Because plaintiffs have not opposed dismissal and have failed to indicate the section of the Suffolk County Human Rights Law which provides for such a claim, it is hereby dismissed.

### *1.*    *Disparate Treatment Under Section 296 of NYSHRL*

Disparate treatment claims brought under Title VII or the NYSHRL are analyzed under the same burden-shifting framework set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *See Lu v. Chase Inv. Servs. Corp.*, 412 F. App'x 413, 418 (2d Cir. 2011); *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). Under this burden shifting test, a plaintiff must first establish a prima facie case of discrimination by showing that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 492 (2d Cir. 2010); *see also McDonnell Douglas Corp.*, 411 U.S. at 802.

However, contrary to the position taken by defendants, a plaintiff at the pleading stage is "not require[d][ ]to plead facts sufficient to establish a prima facie disparate treatment claim." *Boykin v. KeyCorp*, 521 F.3d 202, 212 (2d Cir. 2008) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–12, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)); *see also McDowell v. North Shore–Long Island Jewish Health Sys., Inc.*, 839 F. Supp. 2d 562, 566 (E.D.N.Y. 2012) (indicating that "at the pleadings stage, the Court does not apply the familiar burden shifting test as articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*"). The Second Circuit has explained that a plaintiff is not required to plead "specific facts establishing a prima facie case of discrimination" because the standard articulated in *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement, and that to require more than Rule 8(a)'s

'simplified notice pleading standard' would unjustifiedly impose a heightened pleading requirement on the plaintiff." *Boykin*, 521 F.3d at 212 (internal quotation marks and citations omitted). Notwithstanding the Supreme Court's decision in *Twombly* and *Iqbal*, this remains the proper pleading standard in this Circuit for discrimination claims. *Id.* at 213 (concluding that the Supreme Court decision in *Twombly* "affirmed the vitality of *Swierkiewicz*"); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010) (rejecting defendant's contention that "*Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible"). *But see Schwab v. Small*, 435 F. App'x 37, 40 (2d Cir. 2011) (noting that "[q]uestions have been raised . . . as to *Swierkiewicz's* continued viability in light of *Twombly* and *Iqbal*," but declining to address the question because the complaint "alleges facts sufficient to state a claim of employment discrimination . . . under both the *Swierkiewicz* standard and the more demanding *McDonnell Douglas*-based approach adopted by the district court").

  Although "a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss . . . the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim." *Barbosa v. Continuum Health Partners, Inc.,* 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) (internal quotation marks and citation omitted); *accord Clarke v. Roslyn Union Sch. Dist.*, 2012 WL 2916759, at *6 (E.D.N.Y. July 17, 2012) ("A complaint must allege a plausible claim of discrimination and give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." (internal quotation marks and citations omitted)). To be facially plausible, however, "a plaintiff must allege facts

17

that allow the court in substance to infer elements of a *prima facie* case." *King v. U.S. Sec. Assocs., Inc.*, 2012 WL 4122025, at *5 (S.D.N.Y. Aug. 22, 2012) (collecting cases).

In this case, plaintiffs do not state a facially plausible NYSHRL claim of race and national origin discrimination based on a disparate treatment theory. Assuming for present purposes that plaintiffs alleged in their Complaints that the School District had a policy of requiring teachers to be dual language certified, this would not violate Section 296 of the NYSHRL because this statute does not prohibit discrimination on the basis of language. *See Velasquez v. Goldwater Mem'l Hosp.*, 88 F. Supp. 2d 257, 262 (S.D.N.Y. 2000) ("Classification on the basis of language does not by itself 'identify members of a suspect class' and would not support an inference of intentional national origin discrimination." (quoting *Soberal-Perez*, 717 F.2d at 41)); *see also Garcia v. Gloor*, 618 F.2d 264, 268 (5th Cir. 198) (noting that "common understanding" does not equate "national origin with the language that one chooses to speak"). Therefore, plaintiffs' race and national origin NYHRL discrimination claim based on a disparate treatment theory fails to state a claim to relief.

## 2. *Disparate Impact Under Section 296 of NYSHRL*

"Disparate impact claims 'are concerned with whether employment policies or practices that are neutral on their face and were not intended to discriminate have nevertheless had a disparate effect on [a] protected group.'" *Reynolds*, 685 F.3d at 201 (quoting *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 160 (2d Cir. 2001)). Thus, a plaintiff is required to "(1) identify a specific employment practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship between the two." *Chin v. Port Auth. of N.Y. & N.J.*, 685

18

F.3d 135, 151 (2d Cir. 2012) (internal quotation marks and citations omitted); *accord Gonzalez*, 135 F. Supp. 2d at 399 ("The first step in any disparate impact claim is a prima facie showing by the plaintiffs that a facially neutral employment practice had a significantly discriminatory impact.").

Here, the Complaints lack any allegations in support of such a claim. First, plaintiffs nowhere allege a facially neutral policy. While plaintiffs argue that the School District has a policy of requiring teachers to have dual-certification, such a contention is conspicuously absent from their Complaints. There is no indication as to when such a policy was implemented or how such a policy could coexist with the fact that plaintiffs, who lacked dual-language certification, were recalled to teach other classes in the School District. Second, despite plaintiffs' contention that the Complaints allege that the policy "disproportionately affects them, and other non-Hispanic teachers" (*see* Pls.' Opp'n at 10), no such allegation is found in their Complaints. In light of these pleading deficiencies, plaintiffs' race and national origin NYHRL discrimination claim based on a disparate impact theory is not plausible on its face.[7]

---

[7] For the first time in their reply papers, defendants argue that plaintiffs do not allege in their Complaints that they served a notice of claim pursuant to N.Y. Educ. Law § 3813. Because this contention was raised for the first time on reply, it is improper and will not be considered. *See, e.g.*, *In re Dobbs*, 227 F. App'x 63, 64 (2d Cir. 2007); *United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003); *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993). Plaintiffs, however, should be mindful of this requirement should they seek to replead this cause of action.

### D. Individual Defendants

Finally, defendants argue that the individual defendants should be dismissed from the action. Since all of plaintiffs' claims have been dismissed, a decision on this issue need not be made at this time.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is granted. Because amendment would be futile regarding plaintiffs' due process claim, it is dismissed with prejudice. As for plaintiffs' equal protection claim, it cannot proceed under a disparate impact theory and it appears that plaintiffs do not intend to proceed on an intentional discrimination equal protection claim. Finally, although plaintiffs did not request leave to amend, the Court cannot definitively say that amendment would be futile regarding plaintiffs' NYSHRL claim. Therefore, to the extent that plaintiffs have a good faith basis to plead additional facts that would cure the pleading deficiencies noted above, they may file an amended pleading within thirty (30) days of this Memorandum and Order. If plaintiffs do not file an amended pleading within this time frame, their opportunity to amend shall be deemed waived, judgment will be entered, and the case will be marked closed.

**SO ORDERED.**

Dated: Central Islip, New York
August 13, 2013

_____/s/_____
Denis R. Hurley
Unites States District Judge